RECEIVED
IN LAKE CHARLES, LA
NOV - 3 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JANA AND RYAN JONES, INDIVIDUALLY AND AS CLASS REPRESENTATIVE ON BEHALF OF ALL SIMILARLY SITUATED PERSONS | : | DOCKET NO. 06-1407 |
| VS. | : | JUDGE TRIMBLE |
| NATIONAL SECURITY FIRE & CASUALTY COMPANY | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court are two motions: "Motion to Dismiss Plaintiffs' Complaint and/or to Strike Class Allegations" (doc. #9) filed by defendant, National Security Fire & Casualty Company ("National"), and "Motion for Leave to File First Supplemental and Amended Class Action Complaint" (doc. #19) filed by Plaintiffs. National seeks to dismiss with prejudice the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). National further seeks to strike from the Complaint the allegations for class certification because they do not meet the requirements of Federal Rule of Civil Procedure 23. In response, Plaintiffs filed a motion for leave to file their first supplemental Complaint in an attempt to cure any alleged deficiencies in the original Complaint.

## FACTUAL STATEMENT

Plaintiffs make the following allegations in their Complaint: Defendant, National, insures residential property in Louisiana utilizing standard forms. Plaintiffs, an insured of National, sustained physical loss and damage as a result of Hurricane Rita. Hence, National is obligated to pay for the loss or damage to their dwelling. National has a practice of under-adjusting damages claims

submitted to all of National's insureds in the State of Louisiana and throughout the Nation. Plaintiffs are alleging a class action suit against National.

National has developed a scheme which includes training, software, file documentation and marketing protocols. As a result, National does not disclose to its insureds the true benefits available under the policies. Plaintiffs bring this action on their own behalf and on behalf of all similarly situated persons insured by National for damages sustained as a result of Nationals knowing, intentional and wrongful (1) system of policies of estimating the costs to repair or replace the insureds' damaged property that fails to afford insureds a reasonable, fair market value adjustment of their covered losses, (2) failure to timely and fairly adjust and pay its insureds' covered property damage claims, (3) failure to timely initiate legitimate loss adjustment of its insureds' covered property damage claims, (4) and promulgating policies, procedures and programs for assessing the cost to repair or replace property damage that withholds depreciation applicable to the "deductible" portion of the insureds losses from the amount that National pays to its insureds under the provisions of its "Replacement Value" policies.

Plaintiffs specifically complain of National's policy of (1) not providing in their calculations of damages, overhead and profit of 20%, (2) under-adjustment in the form of unit pricing that is well below market prices, (3) under-accounting for items such as the removal of damaged property by failing to account for the replacement of the damaged property, (4) and undervaluing the actual cash value owed on a covered loss by applying depreciation to the deductible portion of the covered loss.

Plaintiffs assert causes of action which include breach of contract, breach of an implied duty of good faith and fair dealing, and breach of a fiduciary duty. Plaintiffs further seek penalties pursuant to Louisiana Revised Statutes 22:658 and/or 22:1220.

*Motion for leave to file supplemental and amended class action complaint*

In response to National's motion to dismiss the complaint and/or to strike the class allegations in the Complaint, Plaintiffs filed the instant motion for leave in order to narrow the claims asserted and to address various issued raised by National's motion. On October 17, 2006, Plaintiffs informed the court via Local Rule 7.4.1 certification that National objects to the filing of the amending Complaint. Attached to the certification as Exhibit 1 is an email from National which indicates that its ground for objection is that the motion for leave is premature in light of the pending motion to dismiss and/or strike class allegations.

Rule 15(a) of the Federal Rules of Civil Procedure which governs amended and supplemental pleadings provides that "leave shall be freely given when justice so requires." Paragraph (c) further provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, . . .

As noted by Plaintiffs, this case is in its infancy, the amended complaint is not being interposed for any improper purpose, and will not cause any undue prejudice to National if allowed at this stage of the proceedings. Accordingly, the Court will grant Plaintiff's motion for leave to amend.

*Motion to dismiss complaint*

National maintains that Plaintiffs' complaint should be dismissed in its entirety pursuant to Federal Rule of Civil procedure 12(b)(6) because it fails to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state

a claim upon which relief can be granted. In considering a Rule 12(b)(6) motion, the Court must accept the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in plaintiff's favor.[1] "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . ."[2] "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[3] "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[4]

National argues that the Complaint should be dismissed because it does not identify any specific provision of the insurance policy that was breached. In their amended and supplemental complaint, Plaintiffs allege that National issued to them homeowners' insurance policy, No. H05173. As a result of Hurricane Rita, Plaintiffs suffered extensive physical damage and loss to their insured property. Plaintiffs allege that because of the extent of the damage, a general contractor would be required. National tendered to Plaintiffs what it determined to be the "actual cash value" of losses in the amount of approximately $41,000. National determined the "replacement cost value" of Plaintiffs' losses and deducted depreciation from that value, the net figure being the "actual cash value." Then National deducted from the "actual cash value", the $1,000.00 hurricane deductible.

---

[1] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Fernandez-Montes v. Allied Pilots Ass'n.* 987 F.2d 278, 284 (5th Cir. 1993); *Brumberger v. Sallie Mae Servicing Corp.*, 2003 WL 1733548, *1 (E.D. La. March 28, 2003).

[2] *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

[3] *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

[4] *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

Plaintiffs complain that the "actual cash value" is not a fair and reasonable calculation because National's estimate of losses does not employ an up-to-date, fair value for unit costs of material and labor because it does not reflect the impact on such costs of the shortage of supplies and increase in demands in the area affected by the hurricanes. Also, the calculation did not include any amount for general contractor's overhead and profit even though Plaintiffs damages would require more than one trade to repair the damaged property.

As to their breach of contract claim, Plaintiffs direct the Court to the "How Much We Pay For Loss or Claim" section of the policy and ¶ 1.a. pertaining to "Property Coverages":

> **Our Limit** - Subject to the deductible or other limitation that applies, "we" pay the lesser of:
> 1) the "limit" that applies;
> 2) "your" interest in the property; or
> 3) the amount determined under the applicable Loss Settlement Terms.

The "Loss Settlement Terms" provides that National "settle[s] losses on an actual cash value basis," where "[a]ctual cash value includes a deduction for depreciation" and further provides that "[t]he smallest of the following amounts is used in applying the 'terms' under Our Limit [paragraph 1.a(3)]: (1) the cost to repair or replace the property with materials of like kind and quality to the extent practical; [or] (2) the actual cash value of the property at the time of loss. . . ."

"Actual cash value" is defined as follows:

> "Actual cash value" is calculated as the amount it would cost to repair or replace property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation, or obsolescence. Actual cash value applies to valuation of property regardless of whether property has sustained partial or total loss or damage.
>
> Under no circumstance does "actual cash value" include any extra amount due to sentimental value, rarity, or antiquity.

5

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

Plaintiffs point out that National's policy definition is silent on whether general contractor's overhead or profit is included its calculation. Plaintiffs further maintain that because "actual cash value" equals "replacement cost value" less depreciation, and "replacement cost value" is "the cost to repair or replace the property with materials of like kind and quality", a proper determination of "replacement cost value" utilizes up-to-date fair market unit values for materials and labor. Accepting the allegations as true, but without deciding whether or not overhead and profit should have been included in National's calculation of loss, or if National utilized up-to-date fair market unit values, Plaintiffs have alleged sufficient facts as to Nationals policy provisions to state a claim for relief.

National maintains that Plaintiffs' allegations of fraud must be dismissed because they fail to comply with the heightened pleading requirement of Federal Rules of Civil Procedure 9(b).[5] Rule 9(b) requires the who, what, when, where and how to be laid out.[6] Rule 9(b) further requires "allegations of the particulars of time, place and contents of the false representations as well as the identity of the person making the representations and what he obtained thereby."[7] The Court has

---

[5] Rule 9(b) provides the following:

**(B) Fraud, Mistake, Condition of the Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

[6] *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified in part on other grounds, on reh'g, and reh'g en banc denied*, 355 F.3d 356 (5th Cir. 2003).

[7] *Id.* (internal quotation marks omitted).

reviewed the original and supplemental and amended Complaint and finds that the Complaints fail to allege sufficient facts as to the who, what, when, where and why requirements to properly allege a claim of fraud. While Plaintiffs have characterized the express terms or provisions of the policy as misrepresentations of fact, the Court is hesitant to accept such characterization. A different interpretation of a policy does not make the Insurer liable for claims of fraud. For example, Plaintiffs challenge National's valuation of the fair value of unit prices of labor and materials. The determination of a reasonable fair value can vary depending upon the facts and circumstances as well as supply and demand. However, having a different position as to what is the fair value does not rise to the level of fraud. At best, this would be a breach of contract claim. Accordingly, Plaintiffs' claims of fraud will be dismissed.

*Class allegations*

National maintains that any allegations of a class claim must be stricken from the Complaint because it fails to meet the requirements of Federal Rule of Civil Procedure 23.[8] National argues that the Complaint fails to satisfy even the most minimal threshold for maintaining a class action – a well-defined and clearly ascertainable class.[9] Plaintiffs allege that the class consists of National policyholders who sustained property damages to dwellings, buildings or other structures located in

---

[8] Rule 23, in pertinent part, provides the following:

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable,(2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. . . .

[9] *Debremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)

the State of Louisiana on or after August 29, 2005 as a result of hurricanes Katrina and/or Rita whose losses were adjusted by or on behalf of National on an "actual cash value" basis or "replacement cost" basis for whom National and/or its agents or contractors created a damages assessment or estimate of costs to repair or replace said damaged property that indicates the involvement of more than one trade.[10]

> [Class definitions] should avoid criteria that are subjective (*e.g.*, a plaintiff's state of mind) or that depend on the merits (*e.g.*, persons who were discriminated against). Such definitions frustrate efforts to identify class members, contravene the policy against considering the merits of a claim in deciding whether to certify a class, and create potential problems of manageability.[11]
>
> Care should be taken to define the class in objective terms capable of membership ascertainment when appropriate, without regard to the merits of the claim or the seeking of particular relief. Such a definition in terms of objective characteristics of class members avoids problems of circular definitions which depend on the outcome of the litigation on the merits before class members may be ascertained, and does not require the court to engage in an impermissible consideration of the merits of the claims in connection with its class certification determination.[12]

Plaintiffs' attempt to propose a class that is defined and clearly ascertainable has failed. Plaintiffs allege that the class members consist of those who have damage or loss that indicates the involvement of more than one trade in order for that plaintiff to recover profit and overhead for a general contractor. However, there still has to be a factual inquiry into whether needing more than one trade contractor warrants a general contractor. Also, a factual inquiry would have to be made as to whether each putative class member's damages involves more than one trade. Furthermore,

---

[10] First Supplemental and Amended Class Action Complaint, ¶ 51.

[11] Manual for Complex Litigation, Third § 30.14 (emphasis added).

[12] 2 Newberg on Class Actions § 6.14 at 6-61; *Bozaich v. State*, 108 Cal. Rptr. 392, 396 (1973) ("[I]f the rights of each member of the class are dependent upon the facts applicable only to him, there is not the requisite ascertainable class required for a representative suit.")

as to Plaintiff's claims for damages for under adjustment of unit prices because of the supply and demand problem after Hurricanes Katrina and Rita struck Louisiana, a factual inquiry would have to be made into each putative class member's claims, such as where and when materials and supplies were being purchased, what was the market price at that time, and when did the price of materials and supplies decrease. Accordingly, the motion to dismiss the class allegations will be granted.

## **CONCLUSION**

Based on the foregoing, the motion to dismiss the Complaint filed by National will be granted in part and denied in part. The motion will be granted to the extent that the claims for fraud and for a class action will be dismissed, but denied as to the remaining claims. The motion for leave to file the first supplemental and amended complaint will be granted.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 3rd day of November, 2006.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE